United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11   WILLIAM JEFFREY GILLIAM,              No   C 02-3382 VRW

12              Plaintiff,                 ORDER

13          v

14   SONOMA COUNTY, CITY OF SANTA
     ROSA, CALIFORNIA, BOB SMITH,
15   TIMOTHY WERNER, J PEDERSON,
     MIKELL BRYAN, JOAN COOPER and
16   GENERAL DYNAMICS CORPORATION,

17              Defendants.

18

19   _____/

20          Defendant General Dynamics (GD) has filed a motion for

21   FRCP 11 sanctions and to declare plaintiff William Gilliam

22   ("Gilliam") a vexatious litigant  (Doc #74).  Although the court

23   agrees with GD that Rule 11 sanctions are substantively warranted

24   and that it has jurisdiction to entertain such a motion, the court

25   nonetheless concludes that GD's failure to comply with the safe

26   harbor provision of Rule 11 is fatal to its motion.  Declaring

27   Gilliam a vexatious litigant and enjoining him from further

28   vexatious conduct in this (or any similar) suit is, however, within

United States District Court

For the Northern District of California

1  the court's jurisdiction, procedurally proper and substantively

2  warranted.   Accordingly, GD's motion is GRANTED IN PART.

3

4                                  I

5           Gilliam filed the original complaint in this action on

6  July 15, 2002.   It included federal civil rights claims under 42 §§

7  1983 and 1985.   Doc #1.   After defendants GD and Sonoma County (the

8  County) filed motions to dismiss (Doc ##9, 19), the court dismissed

9  Gilliam's original complaint as time-barred (Doc #31).   On July 3,

10  2003, Gilliam filed an amended complaint that asserted federal

11  causes of action based on essentially the same allegations as those

12  in the original complaint.   Doc #33.   GD and the County again filed

13  motions to dismiss (Doc ##35, 39).   GD also requested attorney fees

14  pursuant to 42 USC § 1988(b), which permits such an award to a

15  prevailing civil rights defendant if a plaintiff's claims are

16  unreasonable or vexatious.   On November 17, 2003, the court granted

17  defendants' motions to dismiss for the same reasons it had

18  dismissed the original complaint.   Doc #48.   In that same order,

19  the court granted GD's request for attorney fees on the basis that

20  Gilliam's amended complaint was groundless and without foundation.

21  Because the court required further briefing before determining the

22  appropriate amount of attorney fees to award, the court ordered GD

23  to submit a supplemental memorandum by December 8, 2003.   The court

24  further ordered Gilliam submit any objections to GD's supplemental

25  memorandum by December 22, 2003.

26           GD submitted its supplemental memorandum on December 8,

27  2003.   See Doc ##49, 50.   As of 5:00 pm on December 22, 2003, the

28  court had received nothing from Gilliam.   The court thus issued an

2

United States District Court

For the Northern District of California

order awarding GD $31,771.25 in reasonable attorney fees and costs of $2,782.69.  Doc #51.

Gilliam, however, lodged his objections with the court at approximately 5:30 pm on December 22, 2003.  Doc #53.  The court concluded that it would be preferable to consider Gilliam's objections to GD's supplemental filings (despite the fact that they were filed at the last minute), rather than keeping the order granting attorney fees in effect.  Accordingly, the court suspended its December 22, 2003, order awarding GD its reasonable attorney fees and costs.  Doc #52.  The court invited GD to submit a reply to Gilliam's objections by January 15, 2004, at which time the court would consider the matter submitted.  The court received GD's reply on January 15, 2004.  Doc #59.

On January 22, 2004, the court issued an order reinstating its previous order granting GD its attorney fees and costs in the amount of $34,553.94.  Doc #60.  In that order, the court noted that all of Gilliam's arguments in his objections were based not on whether the fees requested were reasonable, but on whether the court should have awarded GD its fees in the first place.  Because the court had conclusively decided that issue in its November 17, 2003, order, Gilliam's attempt to reopen that issue was improper.  1/22/04 Order (Doc #60) at 5:3-6:28.  The court nevertheless marched through Gilliam's arguments to reconsider the decision to award fees and found them all meritless.  Id at 7:2-13:14.

Shortly after reinstating the December 22, 2003, order determining the proper amount of attorney fees and costs, the court received three new motions from Gilliam.  On January 30, 2004,

3

United States District Court

For the Northern District of California

Gilliam moved the court to recuse itself and to alter or amend the judgment against Gilliam pursuant to FRCP 59(e).  Doc ##61, 62.  On February 9, 2004, Gilliam filed a request for judicial notice and a motion for sanctions against GD.  Doc #63.  None of these motions was noticed for hearing.  On February 9 and 20, 2004, GD filed oppositions to Gilliam's new motions and requested that the court sanction Gilliam and declare him a vexatious litigant.  Doc ##64, 65.

On April 14, 2004, the court issued an order denying all of Gilliam's motions.  Doc #68.  The court found that Gilliam's motion to recuse was frivolous and likely interposed for an improper purpose, 4/14/04 Order (Doc #68) at 6:2-12:27, concluded that Gilliam's motion to alter or amend the judgment was "frivolous at best and false and disingenuous at worst," see id at 13:2-20:11, and denied Gilliam's motion for sanctions as meritless.  Id at 20:13-21:19.  Nevertheless, the court declined to grant GD's request for sanctions or to declare Gilliam a vexatious litigant because GD had not filed its request as a separate motion noticed on the court's regular motion calendar, as is required by Civ L R 7-2 and 7-8.  Id at 21:21-22:27.  The court advised Gilliam, however, that GD appeared to have ample basis to make such a motion and cautioned him against lodging further frivolous motions with the court.  Id at 23:8-11.

Several days later, Gilliam filed a petition for bankruptcy in the United States Bankruptcy Court for the Northern District of California.  See In re Gilliam, No 04-42153 (Bankr N D Cal) (Liguori Decl (Doc #73) ¶5, Exh C).  The bankruptcy court eventually dismissed Gilliam's petition, finding that the petition

United States District Court

For the Northern District of California

1   had been filed in bad faith and that Gilliam had made false

2   statements under penalty of perjury.  Id.  The bankruptcy court

3   prohibited Gilliam from filing another bankruptcy for a period of

4   180 days.  Id.  Meanwhile, the Sonoma County superior court entered

5   a vexatious litigant order against Gilliam on April 20, 2004.  See

6   Liguori Decl (Doc #73) ¶4, Ex B.

7          On May 13, 2004, Gilliam filed a notice of appeal of the

8   court's April 14, 2004, order.  Doc #70.  Subsequently, on June 16,

9   2004, GD filed a duly noticed, separately filed motion for

10  sanctions and to declare Gilliam a vexatious litigant.  Doc #72.

11  GD filed a corrected version of the motion on July 12, 2004.  Doc

12  #74.  The motion was set for a September 2, 2004, hearing.

13         Gilliam failed to oppose the motion in a timely fashion,

14  so on August 16, 2004, the court vacated the September 2, 2004,

15  hearing and issued an order to show cause (OSC) why the motion

16  should not be treated as unopposed.  On August 19, 2004, the court

17  received an opposition from Gilliam to the motion for sanctions.

18  Doc #75.  The court invited GD to file a reply brief, Doc #76,

19  which GD did on September 10, 2004, Doc #77.

20

21                                II

22         The first matter the court must address is whether

23  Gilliam has discharged the August 16, 2004, OSC.  Gilliam filed his

24  opposition to GD's motion on August 19, 2004.  Doc #75.  In that

25  opposition, Gilliam makes several arguments addressing why GD's

26  motion should not be granted.  Based on Gilliam's response, the

27  court is satisfied that Gilliam wishes to oppose the motion and has

28  raised arguments that address the merits of the motion.

**5**

United States District Court

For the Northern District of California

1    Gilliam's August 19 opposition does not, however, address

2 Gilliam's reasons for failing to oppose GD's motion in a timely

3 manner.  Given that the court issued the August 16 OSC only days

4 before receiving Gilliam's August 19 opposition, the court suspects

5 that the OSC and the opposition simply crossed in the mail.  In

6 other words, the opposition probably does not contain a response to

7 the OSC because Gilliam probably had not received the OSC at the

8 time he drafted and filed the opposition.

9    The court remains troubled by Gilliam's failure to file

10 the opposition in a timely fashion.  Pursuant to Civ L R 7-3,

11 Gilliam was required to serve and file his opposition no later than

12 21 days before the September 2 hearing date.  Gilliam should be

13 aware of this rule, as this is not the first time that the court

14 has issued an OSC to him based on his failure to file opposition

15 papers on time.  Nevertheless, the court believes that it is

16 preferable to evaluate GD's motion on its merits, rather than

17 ruling against Gilliam based on his procedural mistakes.  See

18 <u>Gorlikowski v Tolbert</u>, 52 F3d 1439, 1444 (7th Cir 1995); <u>Nilsson,</u>

19 <u>Robbins, Dalgarn, Berliner, Carson & Wurst v Louisiana Hydrolec</u>,

20 854 F2d 1538, 1546 (9th Cir 1988).  Accordingly, the OSC is

21 DISCHARGED and the court will consider Gilliam's late-filed

22 opposition.

23

24                                III

25    In light of the pending appeal, the court must take up

26 the issue of its jurisdiction to entertain GD's motion for

27 sanctions or issue a vexatious litigant order.

28    GD bases its motion for Rule 11 sanctions on Gilliam's

**6**

three motions that the court denied on April 14, 2004, and bases
its motion for a vexatious litigant order on Gilliam's lengthy and
abusive litigation history.  GD argues that, despite the fact that
Gilliam has filed a notice of appeal, the court retains
jurisdiction to decide the instant motion.  Mot Sanctions (Doc #74)
at 6:6-25.

Although an appeal typically divests the district court
of jurisdiction, that rule is not absolute and is a rule of
judicial economy designed simply to avoid the confusion and
inefficiency of two courts determining the same issues at the same
time.  <u>Masalosalo v Stonewall Ins Co</u>, 718 F2d 955, 956 (9th Cir
1983); see also <u>Cal Dep't of Toxic Substances Control v Commercial
Realty Projects, Inc</u>, 309 F3d 1113, 1120-21 (9th Cir 2002) (finding
that divestment upon notice of appeal is "a rule of judicial
economy and not one that strips the district court of subject
matter jurisdiction").  The district court thus retains
jurisdiction to determine collateral matters, such as attorney fee
awards or the modification of injunctions.  <u>Natural Resources
Defense Council v Southwest Marine, Inc</u>, 242 F3d 1163, 1166 (9th
Cir 2001); <u>Masalosalo</u>, 718 F2d at 957.  An issue may be
characterized as "collateral" when the court may resolve it without
(re)adjudicating the merits of the claims or materially altering
the status of the case on appeal.  See <u>Southwest Marine</u>, 242 F3d at
1166.  The Supreme Court has held that sanctions generally are
collateral matters over which the district court is not easily
divested of jurisdiction.  See <u>Cooter & Gell v Hartmarx Corp</u>, 496
US 384 (1990) (holding that a FRCP 41(a)(1) voluntary dismissal
does not divest the district court of jurisdiction to entertain a

7

1    motion for sanctions based on the voluntarily dismissed complaint).

2          GD argues that its motion for sanctions and to declare

3    Gilliam a vexatious litigant constitutes just such a collateral

4    matter.  GD bases this argument on its contention that Gilliam's

5    present appeal only involves the issues whether the court's

6    dismissal of the amended complaint and award of § 1988(b) attorney

7    fees was appropriate.  See Mot Sanctions (Doc #74) at 6:24-25.  In

8    other words, GD contends that the appeal does not involve the

9    issues raised in Gilliam's motions to recuse, to alter or amend the

10   judgment and for sanctions.

11         Gilliam disputes this characterization and argues that

12   imposing sanctions would involve the consideration of issues that

13   are currently before the Ninth Circuit on appeal.  Gilliam may be

14   correct about this; the scope of his appeal may be broader than GD

15   has implied.  Gilliam's notice of appeal is from the court's April

16   14, 2004, order denying Gilliam's motions to recuse, to alter or

17   amend the judgment and for sanctions.  See Liguori Decl (Doc #73)

18   ¶3, Ex A.  It is not for the court to determine the scope of the

19   Ninth Circuit's jurisdiction in this matter, but that court may

20   well be faced with consideration of Gilliam's motions to recuse, to

21   alter or amend and for sanctions.  That said, even if the appeal is

22   as broad as Gilliam suggests, it may nonetheless not divest this

23   court of jurisdiction over the instant motion.

24         In its motion and reply, GD fails to cite any published

25   Ninth Circuit authority that considers in any detail the issue

26   whether the district court may award Rule 11 sanctions or impose a

27   vexatious litigant order after the district court's disposition of

28   the allegedly frivolous pleadings or motions has been appealed.

(GD cites an unpublished 1991 9th Circuit decision (see Mot Sanctions (Doc #74) at 6:14-17).  Of course, the court may not, rely on that unpublished case.  See Civ L R 7-13; 9th Cir Ct App R 36-3.)

The Ninth Circuit discussed this issue briefly in <u>United Energy Owners Cmte, Inc v United States Energy Management Systems, Inc</u>, 837 F2d 356 (9th Cir 1988).  In <u>United Energy</u>, the Ninth Circuit noted that, although the district court should not have imposed sanctions, the district court had retained jurisdiction to impose those sanctions.  837 F2d at 358.  But the district court in <u>United Energy</u> had imposed sanctions based on the plaintiffs' failure to release certain writs of attachment in a timely fashion, rather than on the substantive merits of plaintiffs' pleadings.  Id at 360.  Further, the Ninth Circuit has affirmed a district court's decision to deny a motion for sanctions, given that the motion asked the district court to, in effect, reconsider a prior motion for similar sanctions that was already on appeal.  <u>Trulis v Barton</u>, 107 F3d 685, 694-95 (9th Cir 1995).

Confronted with somewhat limited precedent, the court must locate this case between the poles of <u>Trulis</u> (where the motion for sanctions required direct reconsideration of an issue on appeal) and <u>United Energy</u> (where the motion for sanctions was entirely collateral).  The Supreme Court's guidance in <u>Cooter & Gell</u> is instructive, as it suggests that motions for sanctions (and by extension vexatious litigant orders) are typically collateral matters.  The Ninth Circuit's principal concerns in this area seem to be (1) that the district court not disturb orders or judgments that are on appeal and (2) that the district court and court of

9

appeals not do redundant work by simultaneously considering the same issue.  See, e g, <u>Masalosalo</u>, 718 F2d at 956 (referring to "the confusion and inefficiency of two courts considering the same issues simultaneously"); cf <u>Southwest Marine</u>, 242 F3d at 1166 (stressing that the salient jurisdictional limitation on modifying injunctions pending appeal pursuant to FRCP 62(c) is that "any action taken pursuant to FRCP 62(c) 'may not materially alter the status of the case on appeal'").

In the instant case, the court finds that although adjudicating GD's motion might require consideration of some of the issues that are on appeal, it would not affect the merits of any order now on appeal.  The jurisdictional bar imposed by a notice of appeal does not prevent the district court from considering matters related to issues pending on appeal; it only forbids reevaluation of the very issues that are on appeal.  Such a rule is consistent with the reasoning and result in <u>Cooter & Gell</u>, <u>Masalosalo</u>, <u>United Energy</u>, <u>Trulis</u> and <u>Southwest Marine</u>.

Here, GD's motion for Rule 11 sanctions asks the court to make a substantive finding that Gilliam's three motions were objectively meritless.  Although that may result in a further elaboration of the court's prior orders, it will not modify them or otherwise venture into matters over which the court of appeals has jurisdiction.

There are some small inefficiencies to contend with, but they are not so great that they counsel against retaining jurisdiction under these circumstances.  If the Ninth Circuit reverses this court's determinations on the merits of the motions that triggered GD's request for sanctions, this court might need to

United States District Court

For the Northern District of California

1  revisit any sanctions order predicated on the frivolousness of
2  those underlying motions.  Similarly, there would be a problem with
3  declaring Gilliam a vexatious litigant:  Should the Ninth Circuit
4  reverse the court's previous rulings and remand for further
5  proceedings, it would be an odd result to have enjoined Gilliam
6  from filing any further papers with this court.  Both matters can
7  be addressed if, as and when they arise; the court could vacate an
8  award of sanctions and dissolve a vexatious litigant order to allow
9  Gilliam to proceed in accordance with the Ninth Circuit's mandate.

10       For these reasons, the court concludes that it has
11 jurisdiction to impose the sanctions GD requests.

12

13                                  IV

14       Turning to the merit's of GD's motion for Rule 11
15 sanctions, the court agrees with Gilliam that such a motion is
16 procedurally improper.

17       Rule 11 contains a so-called "safe harbor" provision that
18 requires a party seeking sanctions to serve the Rule 11 motion on
19 the opposing party at least twenty-one days before filing the
20 motion with the district court.  FRCP 11(c)(1)(A); see also
21 Brickwood Contractors, Inc v Datanet Engineering, Inc, 369 F3d 385,
22 389 (4th Cir 2004).  The safe harbor provision also restricts the
23 party seeking sanctions from continuing to do so unless the
24 challenged pleading is not withdrawn or corrected within the
25 twenty-one-day window.  FRCP 11(c)(1)(A); see also Brickwood
26 Contractors, 369 F3d at 389.  The safe harbor provisions of Rule 11
27 are mandatory and cannot be avoided simply because the opposing
28 party has received informal notice of the motion.  Barber v Miller,

United States District Court
For the Northern District of California

146 F3d 707, 710 (9th Cir 1998).

In the case at bar, GD acknowledges that it did not comply with the 21-day safe harbor.  See Reply (Doc #77) at 6 (appealing to out-of-circuit authority for the proposition that "courts retain discretion to award sanctions upon a determination that the movant has 'substantially complied' with [Rule 11]").  That Gilliam may have received actual notice of GD's intent is beside the point; the Ninth Circuit has emphasized repeatedly that the safe harbor requirements must be strictly applied and that only a formal motion served twenty-one days before its filing is sufficient for notice purposes.  Radcliffe v Rainbow Construction Co, 254 F3d 772, 789 (9th Cir 2000); Barber, 146 F3d at 710.

Even assuming that GD served Gilliam with a copy of the motion for sanctions twenty-one days before filing, the court still must find that the motion is procedurally improper.  The Ninth Circuit has emphasized that a motion for sanctions must be served before the conclusion of the case or judicial rejection of the allegedly offending papers.  Barber, 146 F3d at 710-11.  This is because serving the motion after judgment or dismissal essentially deprives the opposing party of an opportunity to withdraw the allegedly offending papers.  The court's April 14, 2004, order both disposed of Gilliam's three motions and effectively ended the litigation of this case.  Service of the motion for sanctions after the court had ruled on the motions and closed the case, therefore, essentially deprived Gilliam of his right to withdraw the motions.

Given these procedural infirmities, the court cannot grant GD's motion for sanctions.  The court further notes that, despite its view that Gilliam's three motions were basically

12

United States District Court

For the Northern District of California

frivolous, the court should not impose sanctions on its own initiative pursuant to Rule 11(c)(1)(B).  GD has initiated the proceedings for sanctions, not the court.  Any sanctions the court might impose would, as a practical matter, be imposed as a result of GD's requests.  See Radcliffe, 254 F3d at 789; Barber, 146 F3d at 711.

Accordingly, GD's motion for Rule 11 sanctions is DENIED.

V

GD also moves the court to declare Gilliam a vexatious litigant.  Mot Sanctions (Doc #74) at 9:16-10:21.  A district court has power under the All Writs Act, 28 USC § 1651(a), to enjoin litigants who abuse the judicial system.  Tripati v Beaman, 878 F2d 351, 352 (9th Cir 1989); Walker v Stanley, 231 BR 343, 350 (N D Cal 1999) (Ware, J); Waldron v Washington Mutual, 1999 US Dist LEXIS 11941, *11 (N D Cal) (Jenkins, J); see DeLong v Hennessey, 912 F2d 1144, 1147 (9th Cir 1999) (recognizing that "there is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances").  "Even onerous conditions may be imposed upon a litigant as long as they are designed to assist the district court in curbing the particular abusive behavior involved."  Tripati, 878 F2d at 352 (internal quotation and citation omitted).

The Ninth Circuit has established four guidelines that a court must follow in enjoining a vexatious litigant:  (1) the litigant must be provided with notice and a chance to be heard before the court enters the order; (2) the court should establish

13

United States District Court

For the Northern District of California

an adequate record for review, that is, a listing of the cases and/or abusive activities undertaken by the litigant; (3) the court must make a substantive finding that the litigant's activities were frivolous and harassing; and (4) the court must narrowly tailor the order to deter the specific vice encountered.  DeLong, 912 F2d at 1147-48.

A

In the case at bar, the first DeLong requirement is readily satisfied.  First, Gilliam has been provided with notice and an opportunity to be heard on the vexatious litigant issue. Defendants filed proof of service of the corrected motion on July 12, 2004, and the court issued to Gilliam an OSC why that motion should not be treated as unopposed on August 16, 2004.  On August 19, 2004, Gilliam filed an opposition to the motion, further demonstrating that he received notice.  Doc #75.  Although the court did not take oral argument on the vexatious litigant issue, "[t]he notice and opportunity requirement does not * * * require an in-person hearing in the district court."  Tripati, 878 F2d at 354.

B

Second, the court is quite familiar with Gilliam's history of vexatious filings.  In this case, Gilliam has taken the following unwarranted actions:

• After the court's order dismissing the original complaint (Doc #31), Gilliam filed an amended complaint that failed to address the weaknesses in the original complaint (Doc

14

1    #33);

2    •    After GD filed a motion to dismiss the amended complaint

3         (Doc #39), Gilliam failed timely to file an opposition,

4         necessitating the issuance of the September 11, 2003, OSC

5         (Doc #42);

6    •    After the September 11 OSC, Gilliam filed an untimely

7         opposition (Doc #45) in which he advanced arguments that

8         the court had previously rejected;

9    •    After the court granted GD's motion for § 1988 attorney

10        fees and requested supplemental briefing on the amount of

11        such fees (Doc #48), Gilliam filed a response that

12        addressed the merits of GD's motion for fees, rather than

13        the amount of such fees (Doc #53);

14   •    After the court issued its final order on the attorney

15        fee award issue (Doc #60), Gilliam filed three frivolous,

16        harassing motions:

17        ▸    The motion to recuse (Doc #62);

18        ▸    The motion to alter or to amend the judgment (Doc

19             #61); and

20        ▸    The motion for Rule 11 sanctions (Doc #62); and

21   •    After GD filed the present motion for sanctions and to

22        declare Gilliam a vexatious litigant (Doc #74), Gilliam

23        failed to respond in a timely fashion, necessitating the

24        issuance of another OSC on August 16, 2004 (Doc #75).

25

26        GD has also presented evidence that Gilliam filed a

27   bankruptcy petition in bad faith in the bankruptcy court of this

28   judicial district.   See Liguori Decl (Doc #73) ¶5, Ex C.   The court

15

1  has also been made aware of at least five other cases, both in this

2  court and in state court, in which Gilliam makes the same or

3  similar claims as he made in this case.  See 5/27/03 Order (Doc

4  #31) at 4:1-19 (taking judicial notice of the filings in (1) <u>Cooper</u>

5  <u>v Gilliam</u>, C 02-499 VRW; (2) <u>Gilliam v Napa County, et al</u>, C 02-705

6  WHA; (3) <u>Gilliam v Austin, et al</u>, C 02-1389 PJH; (4) <u>Cooper v</u>

7  <u>Gilliam</u>, SCV 227783 (Sonoma County Super Ct, Aug 22, 2001); and (5)

8  <u>Cooper v Gilliam</u>, D 02-659 (Contra Costa Super Ct, Feb 15, 2002)).

9  While it is unclear whether all of these cases were vexatious,

10 their existence and numerosity is notable.  One Sonoma County judge

11 found the state court actions vexatious enough to enjoin Gilliam

12 from filing any new pro se litigation in state court.  See Liguori

13 Decl (Doc #73) ¶4, Ex B.

14

15                                  C

16          Next, the court turns to the third <u>DeLong</u> requirement,

17 which is the heart of the matter:  whether the evidence submitted

18 to the court warrants a substantive finding that Gilliam's

19 litigation activities were frivolous or harassing.  In making this

20 determination, the court must consider both the number and the

21 content of Gilliam's filings.  <u>DeLong</u>, 912 F2d at 1148.  The court

22 should examine several factors in this regard: (1) Gilliam's

23 history of litigation and in particular whether it entailed

24 vexatious, harassing or duplicative suits or filings; (2) Gilliam's

25 motive in pursuing the litigation, i e, whether Gilliam has an

26 objective good faith expectation of prevailing; (3) whether Gilliam

27 is represented by counsel; (4) whether Gilliam has caused needless

28 expense to other parties or has posed an unnecessary burden on the

United States District Court

For the Northern District of California

courts and their personnel; (5) whether other sanctions would be adequate to protect the courts and other parties; and (6) whether Gilliam is likely to continue to abuse the judicial process.  <u>Safir v United States Lines, Inc</u>, 792 F2d 19, 24 (2d Cir 1986); <u>Walker</u>, 231 BR at 350-51.

1

With respect to the first factor, it is clear that Gilliam has engaged in a pattern of repetitive and often vexatious litigation tactics.  Gilliam has engaged in at least six different lawsuits that appear to relate in some fashion to the claims at issue in this case.  See 5/27/03 Order (Doc #31) at 4:1-19. Gilliam has also filed a bad faith petition for bankruptcy in this district.  See Liguori Decl (Doc #73) ¶5, Ex C.  And Gilliam's tactics in the present suit have, by any measure, been improper and vexatious.  As the court described in detail in this order and in previous orders, Gilliam has repeatedly defied court orders, failed to respond to GD's motions in a timely fashion, made frivolous arguments in response to those motions and filed frivolous motions for improper purposes.  There can be no question that Gilliam's litigation history evinces a pattern of vexatiousness.

2

As to the second factor, Gilliam cannot at this point have an objective good faith expectation of prevailing.  Gilliam has twice had his complaint dismissed.  After the first dismissal, Gilliam filed an amended complaint that failed to correct the flaws in the first complaint.  Not only did this suggest that Gilliam had

17

1   no basis for correcting those flaws, but the complaint was

2   apparently filed for the purpose of challenging the court's

3   previous ruling.  Gilliam's further vexatious filings have been

4   directed to ancillary matters or have tried improperly to reopen

5   issues the court had already decided.  It is thus apparent that

6   Gilliam "does not have an objective good faith belief of

7   prevailing" but rather continues to pursue the matters "solely to

8   cause the [d]efendants (and the [c]ourt) to expend needless time

9   and incur expense."  Ray v Lowder, 2003 US Dist LEXIS 17681, at *9

10  (M D Fla) (Jones, J).

11

12                                   3

13              The third factor regards whether the litigant is

14  represented by counsel.  Although Gilliam has evidently been

15  assisted by counsel in related proceedings, he has proceeded pro se

16  in the present lawsuit.  But given his frequent filings, it is

17  clear that Gilliam is quite familiar with the federal and state

18  court systems.  Indeed, Gilliam has a law degree and professional

19  experience clerking for licensed attorneys.  See Gilliam Decl (Doc

20  #55) ¶¶5, 6.  Gilliam is thus "not the common type of pro se

21  litigant[] who would normally be entitled to more 'solicitous and

22  generous' consideration."  Castro v United States, 584 F Supp 252,

23  264 (D PR 1984) (Perez-Giminez, J); see also Walker, 231 BR at 351

24  (noting that, despite the debtors' pro se status, nonetheless "they

25  are familiar with the bankruptcy system").  The fact that Gilliam

26  is not presently represented by counsel is thus of little moment.

27

28                                   4

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   With respect to the fourth factor, Gilliam has caused
2   needless expense to the various defendants in this case and has
3   foisted unnecessary burdens on the court.  As a result of Gilliam's
4   meritless filings, GD has been awarded its reasonable attorney fees
5   under § 1988.  Had the court found it procedurally proper, the
6   court would have also sanctioned Gilliam pursuant to FRCP 11.  More
7   to the point, Gilliam has filed repeated groundless motions and
8   other papers.

9   In particular, all three of Gilliam's most recent motions
10  were legally frivolous and undoubtedly presented for an improper
11  purpose.  The court finds that Gilliam's motion to recuse (Doc #62)
12  was frivolous and legally unreasonable.  In its previous order, the
13  court noted a number of substantive problems with Gilliam's motion
14  to recuse, including: (1) the motion was unaccompanied by an
15  affidavit as required by 28 USC § 144; and (2) the court's receipt
16  of unsolicited letters from a pro se party provided no reasonable
17  basis for the undersigned to recuse himself.  4/14/04 Order (Doc
18  #68) at 6:6-10:16.  The court expressly found that "the motion is
19  both frivolous and likely interposed for delay" and did not even
20  warrant referral to another judge for determination, as is the
21  usual practice of the court (see Civ L R 3-15).  Id at 12:21-26.
22  By any standard, Gilliam's motion for recusal was objectively
23  unreasonable.

24  Gilliam's Rule 59(e) motion to alter or amend the court's
25  previous orders (Doc #61) was also legally frivolous.  In its
26  previous order, the court noted that Gilliam's motion was
27  procedurally improper because it was not noticed for a hearing date
28  and thus violated Civ L R 7-2(a).  4/14/04 Order (Doc #68) at 13:7-

19

United States District Court

For the Northern District of California

16.   The court also rejected all of Gilliam's substantive arguments, in large part because most of those arguments were simply attempts to coerce the court into reconsidering arguments it had rejected in connection with its November 17, 2003, order dismissing the case and its January 22, 2004, order awarding GD its attorney fees.  See id at 14:3-20:6.  At various points in that analysis, the court characterized Gilliam's Rule 59(e) arguments as "ridiculous" (id at 14:9), "patently unwarranted" (id at 16:12) and "unintelligible" (id at 19:11).  The court concluded its analysis of this motion by stating that "none of the repetitive and perhaps frivolous arguments that Gilliam raises in his Rule 59(e) motion justify a finding by the court that it committed clear error or that the previous orders were manifestly unjust."  Id at 20:7-10.  The court's view of the reasonableness of Gilliam's Rule 59(e) motion is thus clear from its previous order, and the court reaffirms its previous characterization of the motion as legally frivolous.

Likewise, Gilliam's motion for Rule 11 sanctions against GD (Doc #63) was frivolous.  The court has already noted that this motion suffered from the same Civ L R 7-2(a) defect as the motion to alter or amend.  4/14/04 Order (Doc #68) at 20:26-21:7.  The court further noted that Gilliam's motion, which was based on allegedly improper actions by GD in the South Carolina bankruptcy court, was "substantively unwarranted" because the court had no jurisdiction over the South Carolina proceedings and because Gilliam failed to present any factual documentation of GD's improper motivations.  Id at 21:8-19.  The court agrees with GD that Gilliam's motion for sanctions was "a thinly-veiled attempt at

United States District Court

For the Northern District of California

a tit-for-tat response to [GD's] award of attorney[] fees and expenses."  See Mot Sanctions (Doc #74) at 9:1-2.  As such, Gilliam's motion for sanctions was objectively unreasonable and legally frivolous.

Furthermore, Gilliam has consistently failed to respond to motions brought by defendants.  This has not only caused defendants to incur unnecessary expenses, but it has also resulted in repeated delays and an enormous waste of the court's time and energy.  In short, the unnecessary burdens placed by Gilliam on defendants and the court are numerous, repeated and inexcusable.

5

Considering the fifth factor, it is apparent that no lesser sanction would be adequate to prevent Gilliam from conducting further harassing activity.  In Safir, the Second Circuit upheld the district court's decision to enjoin the plaintiff from filing further vexatious litigation, stating:

> We therefore cannot ignore the obvious fact that mere dismissal of this action will not hinder [plaintiff] from initiating further similar proceedings. [Plaintiff's] abuse of the judicial process, despite his subjective conviction that he has suffered an unremedied injury, cannot be countenanced.  In addition, [plaintiff's] failure to pay costs and fees already assessed against him indicates that other types of sanctions would be unavailing.

Safir, 792 F2d at 25.  If the history of these proceedings demonstrates anything, it is that monetary sanctions are ineffective to encourage Gilliam to obey the court's orders or to cease his vexatious filings.  In fact, given Gilliam's rash of frivolous filings in the wake of the court's order awarding §

1988(b) attorney fees, the imposition of monetary sanctions appears to have precisely the opposite effect.  Although the court would be willing to impose substantial monetary sanctions if Gilliam continues his course of vexatious filings, the court has reason to doubt their efficacy.  Further, merely relying on the court's previous dismissal of the case is not likely to be effective, as adverse rulings have not stopped Gilliam -- indeed, dismissing the case seems to have encouraged such action.  As in <u>Safir</u>, no lesser sanctions are sufficient.

6

     With respect to the sixth and final factor, it is quite likely that Gilliam will continue to abuse the litigation process. Gilliam's repetitive pattern of filing frivolous motions, disobeying court rulings and the like evince his propensity to continue to use the legal system to carry out his misguided quest. And if past behavior is any predictor, this order may well spur Gilliam into action again.  In short, the court finds that it has every reason to determine that Gilliam's actions are frivolous and vexatious.  Thus, the third <u>DeLong</u> guideline is satisfied.

D

     Having determined that the first three <u>DeLong</u> guidelines support an order enjoining Gilliam in some way, the court must now meet the fourth guideline by fashioning an order that is narrowly tailored to remedy the particular ills posed by Gilliam.  In determining the scope of the order, the court is mindful that Gilliam is entitled to some guidelines as to what he must do to

22

obtain the court's permission to file papers or an action.

__Triparti__, 878 F2d at 354.

Accordingly, the court GRANTS GD's motion to declare Gilliam a vexatious litigant (Doc #74).  The court considers relief to be appropriate as follows:

William Jeffrey Gilliam ("Gilliam"), and his agents, servants, employees, attorneys, and persons in active concert and participation with them who receive actual notice of this order are hereby:

(1)  permanently enjoined from filing any additional pleadings or papers in the case at bar, except as described in paragraphs (3), (4), (5) and (6); and

(2)  permanently enjoined from attempting to relitigate, by commencing a lawsuit or any legal proceeding against General Dynamics Corporation or any of the other defendants in this case, issues related to Gilliam's June 13, 2001, arrest and the subsequent emergency protective order, except as described in paragraphs (3), (4), (5) and (6).

(3)  Should Gilliam seek to file papers or suits as described in paragraphs (1) and (2), he shall file a petition for leave to file those papers or suits with the general duty judge of this court.

(4)  Should Gilliam seek to file papers or suits as described in paragraphs (1) and (2), he must first post a bond with the court in the amount of $25,000 to cover costs, fees

United States District Court

For the Northern District of California

and sanctions that may be levied against him.

(5)   This injunction does not apply to any filings Gilliam may make with this court or the Ninth Circuit Court of Appeals in connection with his present appeal or any other appeal in this matter.

(6)   Should the Ninth Circuit reverse the court's judgment in this case and remand for further proceedings, this injunction shall be automatically dissolved upon issuance of the Ninth Circuit's mandate, but only as it pertains to this case as described in paragraph (1), and not as it pertains to any future litigation covered by paragraph (2).

(7)   Failure to comply with the terms of this injunction shall be sufficient grounds for this court or any other court to strike the filing, dismiss the complaint with prejudice and/or impose a sanction for contempt of court, as circumstances require.

VI

Gilliam has also filed a "request for an order to show cause" directed at GD's registration in the District of South Carolina of this court's attorney fee judgment against him.  Doc #79.  Gilliam insists that by (1) obtaining a certified judgment from the clerk, (2) registering the judgment in the District of South Carolina and (3) withdrawing that registration a few weeks later, GD "abused the process and procedures of this Court."  Doc #79 at 1:25.  Gilliam's reasoning is that 28 USC § 1963 (which provides for registration of judgments) permits registration only

24

United States District Court

For the Northern District of California

1  after a judgment is final following any appeal, and GD registered

2  the fee award judgment despite the pendency of Gilliam's appeal of

3  the fee award.

4        Matters seem to have resolved themselves.  Indeed, GD had

5  withdrawn its registration in the District of South Carolina even

6  before Gilliam filed his request for an order to show cause.  See

7  Gilliam Decl (Doc #80) Ex 2 (letter from GD withdrawing

8  registration of judgment).  Unlike Gilliam, the court detects

9  nothing sinister in GD's actions.  Accordingly, Gilliam's request

10  for an order to show cause is DENIED.

11

12                              VII

13        For the foregoing reasons, the court DENIES GD's motion

14  for Rule 11 sanctions and GRANTS its motion to declare Gilliam a

15  vexatious litigant (Doc #74).  Despite the fact that the court

16  agrees with GD that Gilliam's conduct in this case is sanctionable

17  under Rule 11, the court cannot as a procedural matter impose such

18  sanctions.  The court has, however, enjoined further vexatious

19  conduct by Gilliam in this action, and the clerk is DIRECTED to

20  enter the permanent injunction set forth above.  Gilliam's request

21  for an order to show cause (Doc #79) is DENIED.

22

23        IT IS SO ORDERED.

24

25  _____

26  VAUGHN R WALKER

27  United States District Chief Judge

28

25